UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LYNN ANN MUELLER,

       Plaintiff,

v.                                         Case No. 1:09-cv-695
                                         Hon. Gordon J. Quist

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.
                                   /

**REPORT AND RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for disability insurance benefits (DIB) and Supplemental Security Income (SSI).

Plaintiff was born on August 5, 1962 (AR 31).[1] She graduated from high school and attended one year of cosmetology school (AR 40). She alleged a disability onset date of January 1, 2006 (AR 28). Plaintiff had previous employment as a cosmetologist, fast food worker and in-home daycare provider (AR 68). Plaintiff's problems began in 1981, when she suffered injuries in an automobile accident, including a severed left ankle, broken hips and neck injuries (AR 44-45). She identified her disabling conditions as right knee replacement, ankle fusion, bone spurs, arthritis, cervical spine fusion, neck pain, a shoe lift (left leg shorter than right), nerve damage and depression (AR 43, 46-

---

[1] Citations to the administrative record will be referenced as (AR "page #").

53). Plaintiff stated that her injuries limit her abilities as follows: lower back pain; ankle swelling; paralysis in arms; and numbness in arms (AR 52-53). On December 29, 2008, an Administrative Law Judge (ALJ) reviewed plaintiff's claim *de novo* and entered a decision awarding both DIB and SSI benefits from January 1, 2006 and ending on January 1, 2007 (AR 24-33). This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988).

Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity

(determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases. *See Bailey v. Secretary of Health and Human Servs.*, No. 90-3265, 1991 WL 310 at * 3 (6th Cir. Jan. 3, 1991). "The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

In this particular case, the ALJ determined that plaintiff's disability did not continue throughout the date of the decision (AR 26). To make this determination, the ALJ applied the seven step evaluation pursuant to 20 C.F.R. § 416.994(b)(5) (for the Title XVI SSI claim) and an eight step evaluation pursuant to 20 C.F.R. § 404.1594(f) (for the Title II DIB claim) (AR 26). These evaluations are essentially the same, with the exception of the first step of the eight step evaluation for a Title II (DIB), i.e., determining whether the claimant is engaging in substantial gainful activity, an issue not considered in a Title XVI (SSI) claim. Because the eight step evaluation incorporates the seven step evaluation, the court will set forth the elements of the eight step claim:

> (1) Are you engaging in substantial gainful activity? If you are (and any applicable trial work period has been completed), we will find disability to have ended . . .
>
> (2) If you are not, do you have an impairment or combination of impairments which meets or equals the severity of an impairment listed in appendix 1 of this subpart? If you do, your disability will be found to continue.
>
> (3) If you do not, has there been medical improvement as defined in paragraph (b)(1) of this section? If there has been medical improvement as shown by a decrease in medical severity, see step (4). If there has been no decrease in medical severity, there has been no medical improvement. (See step (5).)

4

(4) If there has been medical improvement, we must determine whether it is related to your ability to do work in accordance with paragraphs (b)(1) through (4) of this section; i.e., whether or not there has been an increase in the residual functional capacity based on the impairment(s) that was present at the time of the most recent favorable medical determination. If medical improvement is not related to your ability to do work, see step (5). If medical improvement is related to your ability to do work, see step (6).

(5) If we found at step (3) that there has been no medical improvement or if we found at step (4) that the medical improvement is not related to your ability to work, we consider whether any of the exceptions in paragraphs (d) and (e) of this section apply. If none of them apply, your disability will be found to continue. If one of the first group of exceptions to medical improvement applies, see step (6). If an exception from the second group of exceptions to medical improvement applies, your disability will be found to have ended. The second group of exceptions to medical improvement may be considered at any point in this process.

(6) If medical improvement is shown to be related to your ability to do work or if one of the first group of exceptions to medical improvement applies, we will determine whether all your current impairments in combination are severe (see § 404.1521). This determination will consider all your current impairments and the impact of the combination of those impairments on your ability to function. If the residual functional capacity assessment in step (4) above shows significant limitation of your ability to do basic work activities, see step (7). When the evidence shows that all your current impairments in combination do not significantly limit your physical or mental abilities to do basic work activities, these impairments will not be considered severe in nature. If so, you will no longer be considered to be disabled.

(7) If your impairment(s) is severe, we will assess your current ability to do substantial gainful activity in accordance with § 404.1560. That is, we will assess your residual functional capacity based on all your current impairments and consider whether you can still do work you have done in the past. If you can do such work, disability will be found to have ended.

(8) If you are not able to do work you have done in the past, we will consider one final step. Given the residual functional capacity assessment and considering your age, education and past work experience, can you do other work? If you can, disability will be found to have ended. If you cannot, disability will be found to continue.

20 C.F.R. § 404.1594(f).

## II. ALJ'S DECISION

### A. The five step evaluation[2]

At step one, the ALJ found that plaintiff met the insured status requirements as of January 1, 2006 and that she had not engaged in substantial gainful activity since January 13, 2006, the alleged onset date (AR 28). At step two, the ALJ found that plaintiff suffered from severe impairments of: degenerative disc disease of the cervical spine, left ankle and knees; and degenerative joint disease (AR 28-29). Plaintiff also suffered from depression, which the ALJ determined was "non-severe" (AR 29). The ALJ's determination ended at step three, where he found that from January 1, 2006 through December 31, 2006, the severity of plaintiff's degenerative disc disease met the criteria of Listing 1.04 for Disorders of the Spine, in the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 29). Accordingly, plaintiff was under a disability from January 1, 2006 through December 31, 2006 (AR 29-30).

### B. The eight step evaluation

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since January 13, 2006, the alleged onset date (AR 28). At step two, the ALJ found that beginning on January 1, 2007, plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 30). At step three, the ALJ determined that medical improvement occurred as of January 1, 2007 (AR 30). At step four, the ALJ determined that the medical improvement is related to

---

[2] While the ALJ applied both the five step and the eight step sequential evaluations, his decision did not clearly designate each step of the respective evaluations. However, because the court located each of the steps in the ALJ's decision, a remand would serve no purpose. "No principle of administrative law or common sense requires [a reviewing court] to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result." *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989).

plaintiff's ability to work, because as of that date she no longer had an impairment or combination of impairments that met or equaled a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 30). The ALJ also found that beginning on January 1, 2007, plaintiff had the residual functional capacity (RFC) to perform light work:

> . . . except that she is able to stand/walk about 6 hours in an 8-hour work day. She is able to sit about 6 hours per 8-hour work day. She requires the opportunity to alternate sitting and standing at will. She is limited to occasionally climbing, balancing, stooping, kneeling, crouching and crawling. She is limited to occasional reaching overhead with either arm. She should avoid concentrated exposure to extreme cold and wetness.

(AR 30). Step five is inapplicable.

At step six, the ALJ determined that plaintiff suffered from severe impairments of: degenerative disc disease of the cervical spine, left ankle and knees; and degenerative joint disease (AR 28-29). At step seven, the ALJ determined that beginning on January 1, 2007, plaintiff was unable to perform any of her past relevant work (AR 31). At step eight, the ALJ determined that plaintiff could perform a significant number of jobs in the national economy (AR 32-33). Specifically, plaintiff could perform the following types of unskilled, light work in Michigan's lower peninsula: parking lot attendant (1,500 jobs); inspector (5,000 jobs); order clerk (1,000 jobs); and assembler (2,000 jobs) (AR 32-33). Accordingly, the ALJ determined that plaintiff was disabled under the Social Security Act beginning on January 1, 2006 and ending on January 1, 2007 (AR 33).

## III. ANALYSIS

Plaintiff has raised four issues on appeal:

### A. The ALJ committed reversible error by finding evidence of medical improvement as of January 1, 2007.

Medical improvement is defined as "any decrease in the medical severity of your impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled." 20 C.F.R. § 404.1594(b)(1). "A determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with your impairment(s)." *Id.* In this case, there was no particular event which led the ALJ to determine that the medical improvement occurred on January 1, 2007 (AR 30). The ALJ based this date on four observations: plaintiff still had difficulty with abduction in May 2006, one month after her left ankle fusion surgery; plaintiff did not see her neurosurgeon for her post surgical appointments; in May 2007, the weakness had improved over time and an MRI showed good cervical decompression with no significant root impression and the spinal canal was widely patent; and plaintiff returned to work on a part-time basis near the end of 2006 (AR 30). In his brief, defendant states that this time frame fell between March 2006 (when plaintiff was expected to gain full strength within three to six months (AR 338)), and June 13, 2007 (when plaintiff's doctor described her neck as "doing very well" (AR 498)). Defendant's Brief at pp. 6-7. Defendant further states that there is no record for January 1, 2007, because plaintiff missed appointments between March 2006 and May 2007 (AR 499). *Id.*

It appears to the court that the medical improvement date is not related to any particular occurrence or examination. Rather, the January 1, 2007 date appears to be an arbitrary date chosen between March 2006 and May 2007. Based on this record, it would appear that

improvement was first noted on either May 17, 2007, with the MRI showing positive results for plaintiff's cervical spine, or on June 13, 2007, when the doctor noted that plaintiff's neck was doing very well and she had no significant pain. (AR 498-99). Under these circumstances, the court agrees with plaintiff that there is no evidence of medical improvement as of January 1, 2007, as opposed to May or June of 2007. *See York v. Massanari*, 155 F. Supp. 2d 973, 980 (N.D. Ill. 2001) (the court did not uphold the ALJ's decision regarding medical improvement, where the reasons given by the ALJ "did not build a bridge between the medical evidence of record and her finding that medical improvement occurred"). Accordingly, this matter should be reversed and remanded pursuant to sentence four of § 405(g) for a re-evaluation of the date that plaintiff experienced medical improvement.

### B. The ALJ committed reversible error by not properly considering the statement of the lay witness

Plaintiff contends that the ALJ failed to discuss the statement of plaintiff's employer, Tanya Guy, who gave a statement on June 25, 2008 (AR 266-69). In Ms. Guy's opinion, plaintiff was not capable of working eight hours a day, five days a week (AR 268). Ms. Guy further stated that plaintiff originally worked full time as a hairstylist, but after her neck surgery could only work part time for three hour shifts (AR 266-67). Ms. Guy stated that the three hour shifts were a special accommodation, and that plaintiff could take a break "when she needs to if her arms starts hurting or she gets tired" (AR 267-68). Plaintiff contends that the ALJ's failure to mention Ms. Guy's testimony was in error. The court disagrees.

The Commissioner must provide a statement of evidence and reasons on which the decision is based. *See* 42 U.S.C. § 405(b)(1). However, it is unnecessary for the ALJ to address every piece of evidence. *See Kornecky v. Commissioner of Social Security*, 167 Fed. Appx. 496,

9

507-08 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party") (internal quotation marks omitted); *Heston v. Commissioner of Social Security*, 245 F.3d 528, 534-35 (6th Cir. 2001) (ALJ's failure to discuss a doctor's report was harmless error because the reviewing court should consider all of the evidence in the record). Furthermore, the ALJ's determination that plaintiff could not perform her past relevant work as a cosmetologist on a full-time basis is consistent with, and supported by, Ms. Guy's testimony. Accordingly, plaintiff's claim regarding the ALJ's failure to address Ms. Guy's statement should be denied.

        **C.**        **The ALJ did not have substantial evidence to support his rejecting of the opinion of plaintiff's treating physician.**

In a statement from July 15, 2008, Brian Haskin, M.D., stated that he had treated plaintiff since January of 2004 (AR 540). When asked if plaintiff could work eight hours a day, five days a week, Dr. Haskin stated "I think perhaps not consistently" (AR 540). The doctor stated that this limitation was secondary to her multiple arthritic problems, which were identified as "[c]ervical spine osteoarthritis, lumbar spine osteoarthritis, bilateral knee osteoarthritis, and hand osteoarthritis" (AR 541). Dr. Haskin stated his belief that plaintiff was not a malingerer (AR 541). The doctor further stated that plaintiff had objective evidence to support her subjective complaints of pain ("[m]ultiple imaging studies, x-rays, and reports from specialists") (AR 541). Dr. Haskin stated that plaintiff's arthritic conditions would limit her ability to stoop, crawl, kneel, squat, climb stairs and ladders) (AR 541). The doctor expressed no opinion when asked if plaintiff "would miss days of work in a typical work month as a result of her impairments") (AR 542). When asked if he had an opinion as to whether plaintiff would need to take unscheduled breaks during a typical eight hour shift, the doctor stated "I do believe that is very conceivable that she would need to do that" (AR

542). In addition, the doctor expressed his opinion: that plaintiff would need to have an option to sit and stand; that she had limitations on her ability to use her hands for feeling, handling or manipulating objects; and that she should not work at unprotected heights (AR 542). Finally, the doctor could not address whether plaintiff's condition has remained relatively the same since January 23, 2006 (AR 543).

The ALJ addressed Dr. Haskin's opinions as follows:

> The finding [of medical improvement as of January 1, 2007] is generally consistent with the opinion of a medical consultant of the State agency that reviewed the record in July 2006 (Exhibit 14F). In July 2008 primary care physician Brian Haskin, M.D., stated that perhaps the claimant could not work full time on a consistent basis due to her multiple arthritic problems (Exhibit 24). This opinion was broadly offered without supported [sic] by specific medical reasons. Although I must consider opinions from treating physicians, a conclusion regarding the issue of disability is reserved to the Commissioner (Social Security Ruling 96-5p). However, this finding reflects restrictions mentioned by Dr. Haskin.

(AR 31).

A treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997). The agency regulations provide that if the Commissioner finds that a treating medical source's opinion on the issues of the nature and severity of a claimant's impairments "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [the Commissioner] will give it controlling weight." *Walters*, 127 F.3d at 530, *quoting* 20 C.F.R. § 404.1527(d)(2). An ALJ is not bound by the conclusory statements of doctors, particularly where the statements are unsupported

by detailed objective criteria and documentation. *Buxton*, 246 F.3d at 773; *Cohen v. Secretary of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992). In summary, the opinions of a treating physician "are only accorded great weight when they are supported by sufficient clinical findings and are consistent with the evidence." *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 287 (6th Cir. 1994); 20 C.F.R. § 404.1526. Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004).

Here, the ALJ adopted most of Dr. Haskin's limitations in the RFC determination (AR 30). To the extent that Dr. Haskin opined that plaintiff could not work, that is an opinion reserved to the Commissioner. Although Dr. Haskin was a treating physician, the ALJ was not bound by the doctor's conclusion that plaintiff was unable to work. *See* 20 C.F.R. § 404.1527(e)(1) ( "[a] statement by a medical source that you are 'disabled' or 'unable to work' does not mean that [the Commissioner] will determine that you are disabled' ). Such statements, by even a treating physician, constitute a legal conclusion that is not binding on the Commissioner. *Crisp v. Secretary of Health and Human Services*, 790 F.2d. 450, 452 (6th Cir. 1986). The determination of disability is the prerogative of the Commissioner, not the treating physician. *See Houston v. Secretary of Health and Human Services*, 736 F.2d 365, 367 (6th Cir. 1984). Based on this record, the ALJ articulated good reasons for not crediting portions of Dr. Haskin's opinions. *See Wilson*, 378 F.3d at 545. Plaintiff's claim regarding the ALJ's failure to address Dr. Haskin's opinion should be denied.

> **D.** **The ALJ committed reversible error by failing to ask the vocational expert questions which included accurate information about all of her serious impairments.**

Plaintiff's sole argument on this particular issue is that the vocational expert (VE) testified that she could not work if all of her restrictions were considered. Plaintiff's Brief at p. 16. An ALJ's finding that a plaintiff possesses the capacity to perform substantial gainful activity that exists in the national economy must be supported by substantial evidence that the plaintiff has the vocational qualifications to perform specific jobs. *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 779 (6th Cir. 1987). This evidence may be produced through the testimony of a VE in response to a hypothetical question which accurately portrays the claimant's physical and mental limitations. *See Webb v. Commissioner of Social Security*, 368 F.3d 629, 632 (6th Cir. 2004); *Varley*, 820 F.2d at 779. However, a hypothetical question need only include those limitations which the ALJ accepts as credible. *See Blacha v. Secretary of Health and Human Services.*, 927 F.2d 228, 231 (6th Cir. 1990). *See also Stanley v. Secretary of Health and Human Services.*, 39 F.3d 115, 118 (6th Cir. 1994) ("the ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals"). Because the purpose of the hypothetical question is to elicit testimony regarding a claimant's ability to perform other substantial gainful activity that exists in the national economy, the question does not need to include a listing of the claimant's medical diagnoses. "[A] hypothetical question need only reference all of a claimant's limitations, without reference to the claimant's medical conditions." *Webb*, 368 F.3d at 632.

The ALJ's second hypothetical question included the limitations as set forth in the RFC determination (AR 30, 71-72). Based on these limitations, the VE testified that plaintiff could perform light unskilled work such as parking lot attendant (1,500 jobs), inspector (5,000 jobs), order clerk (1,000 jobs), and assembler/production (2,000 jobs) (AR 72). The ALJ adopted this evidence in his decision (AR 32-33). Plaintiff's attorney presented a different hypothetical question to the

VE, which included the following limitations: the inability to perform work requiring the forward flexion of the cervical spine; difficulty manipulating fine objects relative to bilateral manual dexterity (i.e., fine dexterity), meaning that she could not do that more than occasionally; and performing work no more than three hours per day because of pain, discomfort and fatigue (AR 75-76). The VE testified that these restrictions, specifically the ability to work only three hours per day, would preclude all full-time work (AR 76). Plaintiff's counsel added another restriction, that the person needed to be in a reclined position up to four hours in an eight hour workday (AR 76). Based upon these restrictions, such a person could not work full time (AR 76).

The ALJ did not adopt either work preclusive restriction, i.e., that plaintiff could work only three hour shifts or that she must be in a reclined position for up to four hours in an eight hour workday. The evidence in support of plaintiff's ability to perform three hour shifts is that of her employer, Ms. Guy, who stated that plaintiff could only work a three hour shift as a cosmetologist. Plaintiff's requirement to recline is apparently derived from her testimony that prior to her knee replacement in June 2008, plaintiff would have to recline for about five hours between 8:00 a.m. and 4:00 p.m. on a typical day, due to pain in the back and swelling in her knees and ankles (AR 58).

The ALJ found these claims regarding the intensity, persistence and limiting effects of plaintiff's symptoms as not credible beginning on January 1, 2007, based upon the opinion of the non-examining DDS physician who issued a physical RFC assessment on July 27, 2006 (AR 464-71) and Dr. Haskins statement from July 15, 2008 (AR 31, 464-71, 540-43). An ALJ may discount a claimant's credibility where the ALJ "finds contradictions among the medical records, claimant's testimony, and other evidence." *Walter*, 127 F.3d at 531. The court "may not disturb" an ALJ's

credibility determination "absent [a] compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). *See Casey v. Secretary of Health and Human Servs.*, 987 F.2d 1230, 1234 (6th Cir. 1993) (an ALJ's credibility determinations are accorded deference and not lightly discarded). Plaintiff's inability to work as a cosmetologist for more than three hours is not applicable to the jobs identified by the ALJ, which allowed for the hypothetical person to sit for up to six hours in an eight hour workday and sit or stand at will. In addition, plaintiff's claim that she needed to recline for five hours between 8:00 a.m. and 4:00 p.m. is not consistent with the medical evidence. There is no compelling reason to disturb the ALJ's credibility determination on these matters.

### IV. Recommendation

For the reasons discussed, I respectfully recommend that the Commissioner's decision be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) to re-evaluate the date on which plaintiff experienced medical improvement.


Dated: August 10, 2010                          /s/ Hugh W. Brenneman, Jr.
                                                HUGH W. BRENNEMAN, JR.
                                                United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).